UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRUCE MORRELLI, et al.,** | **1:18-cv-1395-LJO-SAB** |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| **v.** | |
| **CORIZON HEALTH, INC., a Delaware corporation, and DOES 1 through 25, inclusive** | **(Doc. 13)** |
| **Defendants.** | |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of

U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

Plaintiffs, on behalf of themselves and a putative class of similarly situated individuals, filed a complaint against Defendant Corizon Health, Inc. ("Defendant") in Fresno County Superior Court on September 5, 2018, alleging various wage-and-hour claims under California law; Defendant removed the complaint to federal court on October 9, 2018, and moved to dismiss the complaint; the complaint was dismissed with leave to amend. Plaintiffs filed an amended complaint, and Defendant filed a second motion to dismiss which is currently pending before the Court. (Docs. 12, 13.) For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## III. BACKGROUND

Plaintiffs were employed by Defendant as Licensed Vocational Nurses ("LVNs") and Registered Nurses ("RNs") to provide health care services at correctional facilities in Tulare County. Plaintiffs, on behalf of themselves and others similarly situated, allege Defendant established and carried out a policy which violated California's wage-and-hour laws in that Plaintiffs and putative class members were not paid wages according to California law for hours they were required to work such as during statutory lunch and break periods and for overtime hours. Among other allegations, Defendant required Plaintiffs to work a minimum of three 12-hour shifts per week, and restricted Plaintiffs to the work site during rest and meal breaks, but did not pay Plaintiffs for those rest and break periods. Plaintiffs filed a complaint against Defendant stating seven causes of action pursuant to California Law: (1) failure to pay overtime;

(2) failure to provide compliant meal breaks; (3) failure to provide compliant rest breaks; (4) failure to pay minimum wages; (5) failure to provide accurate wage statements; (6) failure to pay all wages due and owing at the time of employment termination; (7) and for violation of California's Unfair Business Practices Act. The original complaint was dismissed, Plaintiffs filed a First Amended Complaint ("FAC"), and presently before the Court is Defendant's Motion to Dismiss the FAC.

## IV. <u>ANALYSIS</u>

### A. Legal Standard – Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions...amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in

3

a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint...must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.    Requests for Judicial Notice**

　　**1.    Defendant's Request for Judicial Notice ("RJN")**

　　Defendant requests the Court take judicial notice of "Alternative Workweek Schedule Election Results" from the records of the California Department of Industrial Relations available on its website. (Doc. 13-2.)  The document was apparently accessed at the Department of Industrial Relations website through a search query by someone at some point – there are no details in Defendant's RJN as to who performed the search or on what date the search was performed.  As the printout shows the data in the database was updated on December 13, 2018, the Court surmises the search occurred at some point between December 13, 2018, and the date the record was filed with the Court on December 20, 2018.

　　Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Federal Rule of Evidence 201 provides an exception to this general rule and allows a court to take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Pursuant to Rule 201, courts are empowered to take judicial notice of a fact that is not subject to reasonable dispute because it is either generally known within the trial court's territorial jurisdiction or it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(1)-(2).

However, a court may *not* take judicial notice of a fact that is "subject to reasonable dispute." In *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), the Ninth Circuit considered a district court's order taking judicial notice of an extradition hearing and notice of the individual signature on the waiver of extradition. The appellate court held that while the district court was permitted to take judicial notice of the *fact* of the hearing and the *fact* that a Waiver of Extradition was signed, the district court erred in taking judicial notice of the *validity* of the extradition waiver which had not yet been proven. *Id.*

The limitations of judicial notice discussed in *Lee* are directly implicated by Defendant's request for judicial notice here. While the workweek election document is publicly available and the fact of its filing is subject to ready and accurate determination, the truth of the contents of the filing are not subject to judicial notice. Specifically, the Court may take judicial notice of the *fact* that alternative workweek election results were filed with the California Department of Industrial Relations as to Defendant's Visalia and San Jose locations (Doc. 13-3), but the Court cannot take judicial notice of the legal effect of this filing or the truth of the contents of the document. *Lee*, 250 F.3d at 688-89. Defendant's request for judicial notice is granted to this limited extent: the Court judicially notices only the existence of this filing with the Department of Industrial Relations, but not the truth of the filing's contents or its legal effect. Whether this document proves in some measure that Defendant was permitted to engage its employees in an alternative workweek schedule without payment of overtime is a merits-based issue and is disputed by Plaintiffs.

**2.     Plaintiffs' Request for Judicial Notice**

In opposition to Defendant's Motion to Dismiss, Plaintiffs request the Court take judicial notice of a complaint filed in another court: *William Soltis v. Corizon Health, Inc.*, No. 17CECG02245, Fresno County Superior Court (July 3, 2017). (Doc. 15-1.) As discussed above, though the Court may take judicial notice that the complaint was filed, it cannot take notice of the truth of the contents of the pleading or the legal effect of its filing. *Lee*, 250 F.3d at 688. The Court will grant Plaintiffs' request limited to the *fact* that this complaint was filed in the Fresno County Superior Court on July 3, 2017, and the *fact*

5

that it contains claims and allegations.  The Court does not judicially notice the truth of the pleading's content or its legal effect.

**C.      Plaintiffs' Overtime Claims**

Plaintiffs allege Defendant violated California Labor Code § 510 by failing to pay Plaintiffs overtime wages for the shifts they worked in excess of 8 hours per day and double-time compensation for shifts exceeding 12 hours.  (Doc. 12, ¶ 29.)

Section 510 of the California Labor Code sets forth default provisions governing what constitutes overtime hours and what rate of pay will apply to various tiers of overtime work.  In relevant part, Section 510(a) provides,

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

Section 510(a)(1) and (2) permit two avenues by which an employee is exempt from the requirements of Section 510, the first of which is relevant to this case.  Under Sections 510(a)(1) and 511, employees may adopt an alternative workweek schedule that allows for some flexibility in work hours without triggering overtime pay.  Section 511(a) provides that "upon the proposal of an employer" and with "approval in a secret ballot election by at least two-thirds of affected employees," employees may "adopt a regularly scheduled alternative workweek that authorizes work by the affected employees for no longer than 10 hours per day within a 40-hour workweek without the payment to affected employees of an overtime rate of compensation."  Relevant here, workers in the health care industry may obtain an alternative workweek schedule of up to 12 hours per day within a 40-hour workweek without triggering payment of overtime compensation.  California Wage Order 5-2001, 8 C.C.R. § 11050.

As to the overtime allegedly worked by Plaintiffs and the putative class, Plaintiffs allege in relevant part as follows:

14.b. Defendants, and each of them, required Plaintiffs and class members to work a minimum of three (3) twelve-hour shifts per week. Plaintiffs and class members were scheduled to work, and did work, approximately three (3) twelve (12) hour shifts per week during their employment. Plaintiffs are **informed and believe** that the Defendant, and each of them, paid the Plaintiffs and class members straight time wages for each twelve-hour shift worked. However, Defendant, and each of them, did not pay the Plaintiffs and class members overtime wages for the hours they worked in excess of eight per day. Therefore, Plaintiffs and class members are owed at least four hours of one-half time their regular rate of pay for each twelve (12) hours shift worked.

14.c. Plaintiffs occasionally worked more than 12 hours per shift. For example, when the RN or LVN who was scheduled to relieve the Plaintiffs or class members after their regularly scheduled twelve (12) hour shift called in sick or did not show up to work, the Plaintiffs or class members were required to remain at work, continuing their patient care, until a replacement could be found. As a result, Plaintiffs and class members worked more than twelve (12) hours per day on occasion. However, the Defendants and each of them did not pay Plaintiffs and class members double time wages for the shifts during which they were required to remain at work for more than twelve hours. Therefore, Plaintiffs and class members are owed double time wages for each shift in which the Plaintiffs or class members were required to remain at work more than twelve (12) hours.

(Doc. 12, ¶¶ 14(b)-(c) (emphasis added).)

## 1. Overtime Compensation for Shifts Exceeding 8 Hours Per Day

Defendant again argues Plaintiffs' overtime claims are insufficiently plead because (1) Plaintiffs fail to allege a specific workweek when any one of them worked overtime hours for which they were not compensated as Defendant maintains is required under *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014); (2) Plaintiffs' allegations lack personal knowledge because they are made on "information and belief" which cannot be credited as true; and (3) Defendant was approved to offer an alternative workweek schedule of three 12-hour shifts per week, thus Plaintiffs cannot state overtime claims based on those 12-hour shifts.

Plaintiffs argue they are not required to allege a "particular instance" of unpaid overtime because Plaintiffs have pled they worked three 12-hour shifts each workweek, and they are owed 4.5 hours of half-time wages – *i.e.*, their allegations are sufficiently specific under *Landers*. Plaintiffs also contend Defendant's alternative workweek schedule argument is subject to factual and legal disputes about whether any election for an alternative work schedule is effective as to Plaintiffs and the putative class,

and this cannot be resolved at the pleading stage. Finally, Plaintiffs argue the necessary allegations to support their overtime claims are not entirely premised on "information and belief" and, moreover, "information and belief" allegations are grounded on facts known to Plaintiffs based in part on the filing of a similar case in Fresno County Superior Court (*William Soltis v. Corizon Health, Inc*), the allegations of which are nearly identical to those Plaintiffs plead here.

Defendant responds that the only exception to the specific-instance pleading requirement of *Landers* occurs when a plaintiff has alleged other factual matter sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Doc. 16, 6:12-14 (quoting *Landers*, 771 F.3d at 641).) Defendant argues Plaintiffs have pled nothing more than a conclusory assertion they regularly worked more than 8 hours per day, occasionally more than 12 hours per day, and were not properly compensated with overtime pay. Defendant further maintains the alternative workweek election filed with the Department of Industrial Relations "indisputably demonstrate[s]" the majority of RNs and LVNs working for Defendant in Visalia and San Jose, California, voted to adopt a 3/12 workweek which means that any 12-hour shifts paid at straight time would not constitute an overtime violation. Combined with allegations based on information and belief, the overtime claims are not viable. Finally, Defendants maintain Plaintiffs' reliance on the allegations of a case filed in a separate lawsuit cannot bolster the insufficient allegations in this case.

For the reasons discussed below, Plaintiffs' overtime claims for shifts worked in excess of eight hours is sufficiently pled.

### a. Specificity Under *Landers*

In *Landers v. Quality Communications, Inc.*, the Ninth Circuit considered the pleading standard post-*Twombly* and *Iqbal* for wage and hour claims under the FLSA (Fair Labor Standards Act).[1] The

---

[1] The standard announced in *Landers* frequently has been applied analogously to wage and hour claims alleged under California law. *See Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1007 n.3 (N.D. Cal. 2016).

plaintiff in *Landers* alleged the defendants failed to pay him the wages he was due, but provided no detail regarding a given workweek when he was not paid his wages. *Id.* at 646. While the plaintiff had alleged he worked more than 40 hours per week for the defendants, he never alleged what conditions forced him to work longer than 40 hours per week or how frequently his workweek exceeded 40 hours. He offered only generalized theories about how the defendants implemented various policies that resulted in the failure to pay proper overtime. *Id.* at 645-46. Notably absent from these allegations was any detail regarding how any of these policies applied to the plaintiff, or gave an example of a particular workweek where he was subject to policies that resulted in the failure to properly compensate him with overtime pay. In affirming dismissal of the plaintiff's claim, the court noted a plaintiff could establish a "plausible [FLSA overtime] claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* at 645.

Plaintiffs here have done more than allege they worked more than 8 hours per day for which they were not properly compensated. Plaintiff allege their normal and assigned work schedule was three 12-hour shifts per week for which they were not paid any overtime. This is distinct from the factual allegations considered in *Landers* or of those considered by other federal appellate courts whose opinions *Landers* cited with approval. For example, in *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012) the plaintiffs alleged only that they had "regularly worked hours over forty in a week and were not compensated for such time." That court determined the allegations were too meager, vague, and conclusory to nudge the claim from the realm of mere conjecture to the realm of plausibility. *Id.* In affirming dismissal, the appellate court noted the claim was "deficient[,] although not by a large margin."

In *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013), the Second Circuit considered the sufficiency of FLSA overtime claims of three plaintiffs who failed to allege they experienced a week where they worked more than 40 hours or that they were uncompensated for that time in those workweeks. The first plaintiff alleged she occasionally worked more than 40 hours per

week, but did not detail how "occasionally" that occurred, what her normal work schedule was, why she had to work beyond her regular scheduled shift, and failed to allege she was denied overtime pay for any week she worked more than 40 hours, *id.* at 642; the second plaintiff alleged she normally worked 30 hours per week but approximately twice a month she worked more shifts resulting in a workweek exceeding 40 hours, but she also failed to allege details about her work schedule and how occasionally or how long she worked in excess of her regular shift or that her employer failed to pay overtime for those additional shifts, *id.*; the third plaintiff alleged he worked between 22.5 and 30 hours per week but never stated he worked more than 40 hours per week during his employment, *id.* All three claims were found deficient because the plaintiffs had failed to allege "a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Id.*

In *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192 (2d Cir. 2013), the Second Circuit concluded an allegation that the plaintiffs were "not compensated for work performed during meal breaks, before and after shifts, or during required trainings" was insufficient because they failed to allege they were scheduled to work more than forty hours in any particular week. The appellate court explained that such allegations were needed to ensure sufficient detail about the length and frequency of their unpaid work to support a reasonable inference they worked more than 40 hours in any given workweek.

Taking up pleading standards in a third FLSA case, *Dejesus v. HF Management Services, LLC*, 726 F.3d 85, 89 (2d Cir. 2013), the Second Circuit considered a plaintiff's allegation she worked more than 40 hours per week during "some or all weeks" of her employment and was not paid the overtime wages due. The plaintiff also alleged there were weeks for which she was paid for her overtime hours, but her employer failed to include commission payments in the calculation of her overtime. The district court dismissed the claim noting the plaintiff had failed to set forth her precise position at the company (on which FLSA applicability was premised), any approximation of the number of overtime hours worked, her rate of pay, or any estimate of the amount of wages due. On appeal, the Second Circuit

agreed the plaintiff had not plausibly alleged she worked overtime without proper compensation noting she had not estimated her hours in any or all weeks nor had she provided any factual allegations to show how and why she was working hours beyond her scheduled shift for which she was uncompensated.

The facts alleged in the FAC are fundamentally different from those in *Landers*, *Pruell*, *Lundy*, *Nakahata*, and *Dejesus*. Here, Plaintiffs have set out their hours and regular shifts, explaining their routine work shifts were 12 hours. They allege they worked three 12-hour shifts every week without *any* overtime compensation for shifts exceeding 8 hours for the duration of their employment. Those details were clearly missing from the allegations the First and Second Circuits confronted in *Lundy*, *Pruell*, *Nakahata*, and *Dejesus*, and those considered by the Ninth Circuit in *Landers*. In those cases, the allegations amounted to conclusory statements the plaintiff or plaintiffs worked some amount of overtime without any facts about their routine shift hours, what hours they worked they considered to be overtime, why they ended up working beyond their scheduled shift, or the frequency they worked beyond their regular shift. Some plaintiffs did not even allege they were uncompensated for the overtime they worked. Here, Plaintiffs give factual context to their claims: they detail the schedules they were assigned to work which were more than 8 hours, that they always worked beyond 8 hours on a shift (a minimum of three 12-hour shifts per week, ¶14(b)), and estimated the amount of overtime they believe they are due for each week they worked (4 hours of half-time for each shift worked, ¶ 14(b)). Given the factual context of their scheduled shifts and the frequency Plaintiffs allege they worked those shifts, there is no reason Plaintiffs need to allege a specific workweek where they worked more than 8 hours per day – they allege their regular schedule was always longer than 8 hours.

Defendant argues Plaintiffs' allegations are insufficient to the extent they are made on information and belief and not their personal knowledge. Setting aside a longer discussion of whether information and belief pleading is acceptable post-*Iqbal* and *Twombly*, even if the allegations based on information and belief render that particular allegation insufficient, the use of that phrase as it pertains to the overtime claims for shifts longer than 8 hours does not invalidate any essential allegation. Plaintiffs allege they

are "informed and believe that the Defendant, and each of them, paid the Plaintiffs and class members straight time wages for each twelve[-]hour shift worked." (FAC, ¶ 14(b).)  Disregarding this allegation, Plaintiffs nonetheless allege they were not paid overtime wages for hours they worked in excess of 8 hours per day.  (FAC, ¶ 14(b).)

### b. Alternative Workweek Schedule

Defendant argues Plaintiffs are not entitled to overtime compensation for hours worked exceeding 8 hours per day due to an alternative workweek schedule that applied to Plaintiffs pursuant to California Labor Code § 511.   In support of this argument, Defendant points to the alternative workweek election results filed with the Department of Industrial Relations pertaining to the Visalia facility in Tulare County.  Defendant maintains this workweek election filing is an official record of the Department of Industrial Relations whose accuracy cannot be questioned.  Given this alternative workweek election filing, Defendant contends Plaintiffs' allegations of failure to pay overtime for work over 8 hours per day is not plausible.

As discussed above, the Court has taken judicial notice of the existence of the workweek election results filed with the Department of Industrial Relations, but not the legal effect of this filing – particularly as Plaintiffs dispute the legal effect of the workweek election filing.  Further, the alternative workweek election is an affirmative defense.  *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 794-95 (1999) (exemptions to Labor Code overtime laws is an affirmative defense and the employer bears the burden of proving the employee is exempt).  Federal pleading rules generally do not require a plaintiff to anticipate and plead around an affirmative defense.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (viability of plaintiff's Section 1983 claim was not predicated on allegation of bad faith to plead around defendant's qualified immunity defense); *United States v. Northern. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) ("A complaint states a claim on which relief may be granted whether or not some defense is potentially available."). That Defendant *may* have an alternative workweek exemption defense under California Labor Code § 511 does not render Plaintiffs' claims implausible.

## 2.    Double-Time Compensation for Work Performed Beyond 12 Hours in a Shift

Pursuant to California Labor Code § 510(a), work in excess of 12 hours in one day shall be "compensated at the rate of no less than twice the regular rate of pay for an employee." The FAC alleges Plaintiffs "occasionally worked more than 12 hours per shift." (FAC, ¶ 14(c).) The FAC alleges an example of when a shift longer than 12 hours was required: "when the RN or LVN who was scheduled to relieve the Plaintiffs or class members after their regularly scheduled twelve (12) hour shift called in sick or did not show up to work, the Plaintiffs or class members were required to remain at work, continuing their patient care, until a replacement could be found." (FAC, ¶ 14(c).)

This threadbare allegation lacks plausibility: it does not indicate what "occasionally" meant for any one of the named Plaintiffs, or in lieu of that, provide a specific example of when an over-twelve-hour shift was required of one of the named Plaintiffs and the amount of time they ended up working past 12 hours in that particular instance. Exact dates are not required, but there must be facts that provide an inference this happened on at least one occasion. This claim to double-time recovery is not well pled.

Turning to Plaintiffs' proposed SAC[2] to determine whether permitting Plaintiffs to amend is futile, the SAC alleges Plaintiffs were routinely scheduled to work a 12.5 hour shift each week for which no double-time was paid for the time over 12 hours. Having a regular scheduled shift of more than 12 hours in length for the duration of Plaintiffs' employment for which no double-time compensation was paid constitutes a plausible claim under Section 510. Defendant argues Plaintiffs' allegations continue to vacillate: the first two versions of the complaint alleged Plaintiffs worked 12-hour shifts, but the proposed SAC now shifts gears and alleges Plaintiffs worked 12.5 hours per shift. According to

---

[2] Plaintiffs submitted a SAC as an attachment to their opposition to Defendant's motion to dismiss. Construing it as a motion to dismiss, Defendant informed the Court in a footnote of its reply brief that it planned to file a brief in opposition to the "motion to amend" prior to the hearing on the motion to dismiss. In taking the matter under submission and vacating the hearing, the Court noted the briefing had been extensive and no further argument was warranted. Defendant nevertheless filed a brief in opposition to Plaintiffs' purported motion to amend. Although Defendant's brief in opposition to the proposed SAC was filed without leave of Court, Plaintiffs were given an opportunity to respond, and the Court has considered the briefs to determine whether and how amendment of the complaint may proceed. All of this additional briefing was *entirely* unnecessary, and the parties have needlessly usurped their own resources and those of the Court.

Defendant, these changes in the allegations render the double-time claim even more implausible. However, inconsistency—even direct contradiction—between a current complaint and an earlier one is not a basis for dismissal. *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007). The fact that the earlier complaint is inconsistent may have collateral consequences in the litigation, including undermining a plaintiff's credibility, *id.* at 859 n. 2, but it does not render the FAC or proposed SAC legally insufficient under Rule 12(b), *id.* at 860. As Plaintiffs have proposed a manner to amend the FAC and cure the defects of their double-time claim under Section 510, the Court will permit amendment of this double-time claim as set out in the proposed SAC.

### 3.    Overtime for Workweeks Longer than 40 Hours

Plaintiffs are unable to allege a plausible claim for overtime based on a workweek that is longer than 40 hours. Plaintiffs allege only that they worked three 12-hour shifts per week. Even in the proposed SAC, Plaintiffs only allege three 12.5 hour shifts per week – which is still not more than 40 hours per week. There is only a single allegation Plaintiffs occasionally worked more than 40-hours per week. (proposed SAC, Doc 15, p. 46, ¶ 29.) Plaintiffs do not describe how often this happened or facts from which it can be inferred they actually worked more than 40 hours in any given week of their employment. This claim of violation of Section 510 merely tracks the statutory language and is insufficient to state a plausible claim for overtime based on a workweek longer than 40-hours. This bare allegation of an overtime violation under Section 510 is dismissed, and it is clear from the proposed SAC that Plaintiffs are unable to marshal additional facts to state a cognizable claim on this ground.

### D.    Meal and Rest Break Claims

The California Labor Code requires employers to provide off-duty meal periods of at least 30 minutes for each day worked of five hours or more, and to provide a second meal period of at least 30 minutes for each day worked of 10 hours or more. Cal. Labor Code §§ 512(a), 226.7. The California Labor Code also requires employers to provide paid off-duty rest periods to Plaintiffs and putative class members of 10 minutes for each four hours worked and major fractions thereof. Plaintiffs allege

1  Defendant

2      carried out a business policy and practice to staff the county facilities with only one
       nursing professional.  As a result of the contractual obligations the Defendant owed to the
3      County of Tulare and other counties through California, Defendant and each of them,
       implemented a policy and practice prohibiting the Plaintiffs and class members from
4      leaving the work place during statutorily required off-duty meal and rest breaks.
       Accordingly, Plaintiffs and class members remained under Defendant's control during
5      meal and rest break time.  Moreover, Defendant did not provide Plaintiffs with adequate
       rest break facilities.  Despite being under the Defendant's control during break time,
6      Defendant required Plaintiffs to clock in and out during meal period time so the time could
       be deducted from their total hours worked each shift.

7  (FAC, ¶ 14(c).)

8

9      Defendant argues Plaintiffs' meal- and rest-break claims are not pled with enough factual

10 specificity to render it plausible that meal and rest-break violations occurred.  Defendant maintains

11 Plaintiffs fail to cite "a single example of such an occasion where [they had to forego breaks], and not a

12 single Plaintiff alleges that he or she was ever the only nursing professional staffed on a shift or was, on

13 at least one specific occasion, prohibited from leaving the premises as a result of Defendant's policies or

14 practices."  (Doc. 13-1, 21:1-4.)  Moreover, Defendant contends, Plaintiffs' allegation that Defendant

15 only scheduled one nursing professional at its county facilities is impossible – seven Plaintiffs working

16 three 12-hour shifts in a week would necessarily overlap some shifts such that more than one nursing

17 professional would have necessarily been working on certain shifts.  The allegation Plaintiffs were

18 precluded from taking breaks because there was only one nursing professional staffed on any particular

19 shift is not plausible.

20     Plaintiffs note they never alleged they all worked at the same county facility or that they worked

21 solely at one county facility – the allegation they worked alone as a sole nursing professional on a

22 scheduled shift is not implausible.  Plaintiffs also maintain their allegations of what precluded them from

23 meal breaks are not conclusory and threadbare – they specifically allege the policy that precluded them

24 from taking breaks during their shift and that they were forced to punch out during their breaks even

25 though they were not relieved of all their duties.

Plaintiffs' meal- and rest-break allegations are sufficient to meet the plausibility standard under *Twombly* and *Iqbal*. Plaintiffs adequately allege they missed meal- and rest-breaks because there was only one nursing professional on staff on any particular shift; this meant Plaintiffs were not fully relieved of their duties during break and meal times because Defendant's contract with the county facility required it to always maintain at least one nursing professional on site to respond to emergencies and health care needs of the facility's inmates. (FAC, ¶ 14(d).) Plaintiffs also allege they were prohibited from leaving the work place during break and meal times, yet Plaintiffs were instructed to punch out during meal and rest periods. Moreover, Plaintiffs allege adequate break facilities were not provided.

As to whether Plaintiffs have alleged an impossibility by maintaining only one nursing professional was scheduled on any particular shift, the FAC belies Defendant's argument. Plaintiffs do indeed allege they were "employed in Tulare County" by Defendant, but they never allege they worked at the same facility. And, while Defendant is correct that Plaintiffs failed to expressly allege they worked at a *county* facility that maintained the alleged one-nursing-professional-per-shift policy, Plaintiffs each allege they were terminated because Defendant lost its contract with the County of Tulare. This is sufficient to infer the facilities at which Plaintiffs worked in Tulare County were indeed a county facility. (*See* FAC, ¶¶ 2-7.) Plaintiffs meal- and rest-break claims are adequately alleged.[3]

**E.    Unpaid Minimum Wages**

California Labor Code § 1194 requires employers to pay at least minimum wages for all the time Plaintiffs and putative class members were suffered or permitted to work or were under their employer's control.

Plaintiffs allege Defendant automatically deducted time from Plaintiffs' total hours worked for meal periods that were not provided, during which times Plaintiffs and putative class members were

---

[3] Defendant also maintains that much of the meal and break period allegations prefaced on information and belief and not their personal knowledge such that it can be credited as true. Even to the extent such allegations were insufficient, the proposed SAC provides specific allegations from each named Plaintiff about the lack of compliant meal and rest breaks. Any purported defect in this regard is curable through the proposed SAC.

working and/or remained under Defendant's control in that they were not permitted to leave the work premises. (FAC, ¶ 42.) Specifically, Plaintiffs maintain Defendant had a policy and practice of staffing facilities with only one nursing professional. Because Defendant was required to keep one nursing professional on staff at all times pursuant to Defendant's contractual obligation with the county facility, Plaintiffs were not permitted to leave the facility during their meal- and rest-break periods. Despite their inability to leave the facility during meal and break times, Defendant automatically deducted meal periods from the hours worked each day, which resulted in 0.5 to 1 hours worked per shift for which zero wages were paid. (FAC, ¶ 14(d).) Due to the alleged failure to pay wages to Plaintiffs for meal and break times, Defendant failed to pay at least the minimum wages under California Labor Code §§ 223 and 1194.

Defendant argues this claim is predicated entirely on Plaintiffs' meal- and rest-break claims, which Defendant maintains are insufficiently pled. However, as discussed above, Plaintiffs meal- and rest-break claims are adequately stated. Plaintiffs unpaid minimum wage claim predicated on the meal- and rest-break claims is therefore viable.

**F.      Failure to Provide Accurate Wage Statements**

California Labor Code § 226 requires employers to provide employees with "an accurate itemized statement in writing showing" nine critical payroll elements. Cal. Lab. Code § 226(a). Employers must provide these wage statements either "semimonthly or at the time of each payment of wages." *Id.* Section 226 also creates a cause of action for employees whose employers do not provide adequate wage statements. *Id.* at § 226(e). To recover, a plaintiff must establish three elements: (1) "a violation of [§] 226(a); (2) that is 'knowing and intentional'; and (3) a resulting injury." *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1131 (E.D. Cal. 2015) (quoting *Wilner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014)).

Defendant first argues Plaintiffs' allegations supporting their inaccurate wage statement claim are conclusory and must be dismissed. This claim is predicated in large part on Defendant's purported failure

to pay overtime due for every shift Plaintiffs worked and for all meal- and rest-breaks which Plaintiffs allegedly missed because of the policy they were to remain on property and available for work during their breaks.  As those claims are adequately alleged, there is sufficient factual detail to support an inadequate wage statement claim.  In the cases Defendant cites, the inaccurate wage claim was dismissed along with the predicate overtime and meal-break claims which lacked sufficient factual detail.  *See Harding v. Time Warner, Inc.*, No. 09-cv-1212-WQH-WMc, 2009 WL 2575898, at *4 (S.C. Cal. Aug. 18, 2009); *Ritenour v. Carrington Mort. Servs. LLC*, 228 F. Supp. 3d 1025, 1033 (C.D. Cal. 2017).

Defendant also avers Plaintiffs have failed to allege an actual injury resulting from the alleged inaccurate wage statements.  Effective January 1, 2013, § 226(e) was amended to clarify when an employee is deemed to have suffered an injury for purposes of § 226.  "That amendment explained that the employee suffers injury when an employer fails to provide accurate and complete information as required by [226(a)] . . . ."  *Novoa v. Charter Comm'ns, LLC*, 100 F. Supp. 3d 1013, 1029 (E.D. Cal. 2015); *Boyd v. Bank of Am. Corp.*, 109 F. Supp. 3d 1273, 1308 (C.D. Cal. 2015) ("[T]he amendment simply codified the established law that an employee who 'cannot promptly and easily determine from the wage statement alone' [the] requirements under § 226(a) has suffered an injury.").  Section 226(e)(2)(B) now provides that "[a]n employee is deemed to suffer injury . . . if the employer fails to provide accurate and complete information as required by . . . [§ 226(a)] and the employee cannot promptly and easily determine from the wage statement alone" the information that § 226(a) requires the employer to provide.  Cal. Lab. Code § 226(e)(2)(B).

Plaintiffs have adequately alleged they received wage statements that were silent as to the total hours they worked (*e.g.*, overtime hours and meal and rest breaks), the wage statements were inaccurate for that reason, and they could not promptly and easily determine the total hours worked and the applicable hourly rates – *e.g.*, regular, overtime and double-time rates.  (FAC, ¶ 47.)  Consequently, Plaintiffs have adequately alleged the requisite injury because, due to the deficient wage statements they received, they could not "promptly and easily determine from the wage statement alone" the hours they

worked as required by § 226(a). Cal. Lab. Code § 226(e)(2)(B). The Court concludes Plaintiffs sufficiently allege an injury under § 226, and their inaccurate wage-statements claim is viable.

**G.      Waiting Time Penalties Claim and California Business & Professions Code § 17200**

Plaintiffs' Sixth Cause of Action arises under California Labor Code §§ 201, 202, and 203 which require employers to pay all wages due and owing immediately upon an employee's involuntary termination of employment, and within 72 hours to employees who quit voluntarily. Plaintiffs allege that Defendant failed to pay Plaintiffs all wages due on employment termination because Defendant knew it had failed to pay overtime or double-time wages and wages had been deducted for off-duty meal periods that were not provided. (FAC, ¶ 51.)

Plaintiffs' Seventh Cause of Action arises under California Business and Professions Code § 17200. Plaintiffs allege Defendant violated Section 17200 by virtue of the alleged California Labor Code violations in failing to pay overtime, provide breaks, provide accurate wage statements, and to pay wages promptly upon termination. (FAC, ¶¶ 54-55.)

As to both these claims, Defendant argues they are predicated on the overtime, minimum wage, and meal/rest break claims which Defendant maintains are all deficiently pled. Moreover, Defendant asserts these claims are devoid of any factual allegations – they merely allege a recitation of the applicable statutory language with no factual content. As already discussed, the predicate claims are adequately alleged. As the allegations pertaining to those claims are incorporated by reference, the wait-time penalty and Section 17200 claims are sufficiently pled. As to waiting time penalties, Plaintiffs allege their employment was involuntarily terminated in June 2018 when Defendant lost its contract with Tulare County. Plaintiffs further allege they were not paid for any overtime or missed meal and rest breaks – which are all wages that allegedly should have been paid at termination. This claim is sufficiently pled. Pertaining to § 17200, because Plaintiffs have alleged sufficient predicate claims, the § 17200 claim is also viable.

**H.    Injunctive Relief**

Defendant argues Plaintiffs lack standing to seek prospective injunctive relief, which Plaintiffs have including in their prayer for relief:  "For a permanent injunction, prohibiting defendants, and each of them, from engaging in any and all practices found by the court to constitute unfair competition, unfair business practices, or other violation California's Unfair Competition Law (Business and Professions Code sections 17200 *et seq.*)."  (FAC, p. 18, ¶ 4.)  Defendant argues because Plaintiffs are former employees, they are unable to demonstrate Defendant can redress their alleged injuries by future actions. In the context of a putative class action, if the named plaintiffs are not entitled to seek injunctive relief, they may not represent a class seeking that relief.  (Doc. 13-1, 27:16-18 (citing *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)).)

Plaintiffs do not oppose Defendant's motion in this respect.  As Plaintiffs are former employees and cannot seek prospective injunctive relief for Defendant's future actions, Plaintiffs' prayer for prospective injunctive relief is dismissed with prejudice.  *See Ramirez v. Manpower, Inc.*, No. 5:13-cv-2880-EJD, 2014 WL 116531, at *7 (N.D. Cal. Jan 13, 2014) ("a former employee lacks standing to seek prospective injunctive relief"); *Delodder v. Aerotek, Inc.*, No. 08-cv-6044-CAS (AGRx), 2009 WL 3770670, at *3 (C.D. Cal. Nov. 9, 2009) (same); *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) ("In the context of injunctive relief, plaintiff must demonstrate a real or immediate threat of an irreparable injury.").

**I.    Plaintiffs' Statewide Class Allegations**

Defendant urges the Court to dismiss (under Rule 12(b)(6)) or to strike (under Rule 12(f)) Plaintiffs' state-wide class allegations because Plaintiffs are unable to allege facts that would plausibly – under the *Iqbal* and *Twombly* pleading standard – support the conclusion that employees at Defendant's other locations in California allegedly experienced Plaintiffs' claimed wage and hour violations in a similar manner.  Defendant argues Plaintiffs' allegations and theories are based only on circumstances Plaintiffs experienced at the facilities where they worked in Tulare County – they do not include any

20

factual allegations as to the schedules or work experiences of *anyone* at any *other* facility. According to Defendants, "Plaintiffs allege zero facts as to similar contractual provisions in place at other facilities or any other state-wide policy or practice impeding class members' ability to take breaks as needed (let alone how Plaintiffs would have any knowledge of such other contracts, policies or practices impacting class members at other facilities)." (Doc. 13-1, 30:5-8.) In sum, Defendant argues Plaintiffs' "allegations fail to assert a common basis for relief along a common theory of liability for all class members, thus dismissal of the class allegations is appropriate." (*Id.*).

Plaintiffs respond that *Soltis v. Corizon Health, Inc.*, Case No. 17CECG02245, filed in Fresno County Superior Court, contains the same allegations as here: the named plaintiffs worked three 12-hour shifts each week providing medical services to inmates housed in the county jail. Plaintiffs argue the *Soltis* complaint, Plaintiffs' allegations in this case as to the Tulare County facilities, and Defendant's filing of an alternative workweek election result as to employees in Santa Clara County, all indicate Defendant employed RNs and LVNs in three different counties in California. Plaintiffs assert that based on this information and the FAC class allegations, there is a sufficient showing the Rule 23 requirements, including commonality, can be met and the class allegations should not be dismissed or stricken.

As an initial matter, Defendant correctly notes Plaintiffs fail to address Defendant's core argument: Plaintiffs allege the putative class has suffered the same wage and hour violations as Plaintiffs, but do not specifically allege facts establishing *how* they know this is true given that their individual experiences pertain only to facilities in Tulare County. Under Rule 23, a class action may be maintained only if, among other requirements, there are questions of law or fact common to the class and the claims or defenses of the representative parties are typical of the claims or defenses of the class. In essence, Defendant's argument is that Plaintiffs' class allegations pertaining to commonality and typicality under Rule 23 do not meet the plausibility requirement under *Iqbal* and *Twombly* for Rule 8 pleading purposes.

Defendant cites no binding authority that Rule 8 pleading standards apply to Rule 23 allegations for class relief. Rule 12(b)(6) permits a party to assert a defense that the opposing party has "failed to

state a claim upon which relief can be granted," but a class action is a procedural device, not a claim for relief. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980) (characterizing class action as a procedural device to pursue individual claims); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 408 (2010) ("A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."). Beyond that Rule 12(b)(6) pertains to claims for relief (not allegations invoking a particular procedural device under Rule 23, the use of Rule 12(b)(6) to dispose of class allegations relating to certification under Rule 23 would create redundancies in the Federal Rules. *Clerkin v. MyLife.Com*, No. 11-cv-00527 CW, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011); *Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705-DMR, 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013) (Rule 12(b)(6) would address the same deficiencies as a Rule 12(f) motion if applied to class allegations).

The Court has carefully reviewed the cases Defendant cites dismissing or striking class allegations under Federal Rule 12(b)(6) or Rule 12(f). Almost all of these cases address instances where the named plaintiffs' individual claims were subject to dismissal under Rule 12(b)(6) for failure to state a claim under Rule 8. Without a cognizable substantive underlying claim which the putative class could join, there was no basis for the use of a class action device and the class allegations were dismissed. *See, e.g., Deleon v. Time Warner able LLC,* No. 09-cv-2438-AG-RNBX, 2009 WL 9426145, at *3-4 (C.D. Cal. July 17, 2009); *Ortiz v. Sodexo Operations,* LLC, No. 10-cv-04158 R (RCx), 2010 WL 11552888, at *1 (C.D. Cal. Aug. 12, 2010) (dismissing named plaintiff's claims and putative class allegations noting the entire complaint was "made up of bald legal assertions and conclusory allegations"). That is not the situation here, however, as the named Plaintiffs' allegations are cognizable.

Another district court dismissed allegations of the putative class after finding the plaintiffs' substantive underlying claims were insufficiently pled but went a step further and noted there were insufficient facts under Rule 8 to indicate those claims were common to the putative class. *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 14-cv-1093-AG (ANx), 2015 WL 12912337, at *4

(C.D. Cal. Mar. 16, 2015). That court expressed concern that without specific allegations showing the plaintiffs' claims were representative of the putative class, class certification discovery would be tantamount to a fishing expedition; as a result, the putative class allegations were subject to dismissal at the pleading stage. *Id.* Similarly, in *Mendez v. H.J. Heinz, L.P.*, No. 12-cv-5653-GHK, 2012 WL 12888526, at \*4 (C.D. Cal. Nov. 13, 2012), the court dismissed putative class allegations under Rule 12(b)(6) because the named plaintiff had not shown the defendant's practices of rounding employee time records were implemented on a statewide and nationwide basis during the class period – *i.e.*, the plaintiffs' class allegations were all based on policies that applied to "Factory Employees"; no allegations indicated the policies applied state or nationwide to employees outside that particular factory. *Id.*

Nevertheless, other district courts have refused to strike or dismiss putative class allegations under Rule 12(b)(6) by reasoning the defendants' arguments actually pertained to class-action certification requirements under Rule 23; therefore, the arguments were more appropriately addressed through Rule 23. *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1104 (N.D. Cal. 2014); *Clerkin*, 2011 WL 3809912, at \*3; *see Cruz*, 2013 WL 1892337, at \*5. These district courts, and many others, have also refused to strike class allegations under Rule 12(f) noting that such dismissals are rare and generally disfavored. Rule 12(f) permits the court to strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter," but this is usually invoked where the plaintiff seeks a form of relief that is not available as a matter of law. *Cruz*, 2013 WL 1892337, at \*4 (citing *Rosales v. Citibank, Federal Savings Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). Motions to strike must be viewed in the light most favorable to the nonmoving party; there must be no questions of fact that the claim or defense is insufficient as a matter of law and cannot succeed under any circumstances. *Tristar Pictures, Inc. v. Del Taco, Inc.*, No. 99-cv-07655-DDP, 1999 WL 33260839, at \*1 (C.D. Cal. Aug. 31, 1999); *see also Manning v. Boston Med Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("[Rule 12(f)] motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion."). There is also a sizable body of district court decisions finding dismissal of class allegations at the pleading stage

23

to be premature in advance of a motion for class certification after some opportunity for discovery. *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244-45 (C.D. Cal. 2011).[4]

Having closely considered a wide range of court decisions on the issue of dismissing or striking class allegations at the pleading stage, the Court finds it is inappropriate here to dismiss the class allegations under either Rule 12(b)(6) or strike them under Rule 12(f). The Rule 8 pleading standard has not been held to govern class certification allegations made under Rule 23. Because class actions are procedural devices and not claims for relief under Rule 8, it is incongruent to impose a Rule 8 pleading standard to the elements of class certification such as commonality or typicality.[5] Rule 23 itself contains no pleading requirements, even though as a practical matter there must be allegations invoking the class action device under Rule 23. Further, courts which have dismissed or stricken class allegations at the pleading stage have not provided any extended consideration of the interplay between the various Rules of Civil Procedure and their applicability to class allegations. Without a reasoned analysis of this issue, district courts dismissing class actions under Rule 12(b)(6) or striking allegations under Rule 12(f) are less persuasive. While there are scenarios where dismissing or striking class allegations would be proper at the pleading stage,[6] the Court does not conclude such a situation exists here.

The class allegations do not suggest it is impossible for Plaintiffs to establish the Rule 23 certification requirements – in fact, even if a Rule 8 standard was applicable to these allegations, they appear plausible. Plaintiffs allege the one-nursing-professional-per-shift policy and practice extends throughout facilities where Defendant sources nursing services. (FAC, ¶ 14(d).) Though Plaintiffs do

---

[4] The *Cholakyan* court collected cases where courts have refused to dismiss or strike class allegations at the pleading stage.

[5] *Twombly* itself was a complex putative class action, but the allegations found lacking plausibility were the substantive anti-trust conspiracy claims of the named plaintiffs – not class allegations pertaining to the Rule 23 commonality and typicality requirements. 550 U.S. at 564-70.

[6] This Court has stricken class allegations where the plaintiff's complaint unequivocally established numerosity under Rule 23 could not be met, and the plaintiff conceded this fact in responding to a motion to dismiss. In that case, the class allegations were entirely immaterial under Rule 12(f) because they indisputably fell short of meeting the Rule 23 requirements. *Roberson v. Danny Ontiveros Trucking*, No. 08-cv-0552-LJO-SMS, 2008 WL 4809960, at *6 (E.D. Cal. Nov. 3, 2008).

not allege *specific* knowledge or facts about other facilities where Defendant employs nursing professionals, there are some reasonable inferences that can be drawn as to other facilities. First, economic realities suggest a business will attempt to streamline its employment practices: it is less than likely a business maintains wholly different employment practices from location to location, particularly as it relates to a specific type of employee. Thus, if a policy of only staffing one nursing professional per shift (when it is contractually possible to do so) is utilized in one setting, it is likely that policy and practice is extended to other facilities where that business sources the same type of labor; and, Plaintiffs have alleged on information and belief this particular understaffing policy extends to Defendant's other locations. (FAC, ¶ 14(d).)

Second, the putative class does not encompass a broad range of employee types – *i.e.*, the putative class is limited to nursing professionals (RNs and LVNs) and does not include employees whose job duties do not translate directly to health and safety concerns.[7] In this way, uniformity of policies and practices as to breaks and shift schedules is more likely across locations. That is enough to suggest the Rule 23 commonality and typicality requirements can be met, which is sufficient to ameliorate concerns about potential discovery fishing expeditions. *See Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983) ("a district court must retain the power to insist on upon some specificity in pleading before allowing a potentially massive factual controversy to proceed"). Without some discovery, a merits-like determination of commonality and typicality between the putative class and the named Plaintiffs in advance of the certification stage is premature.[8]

---

[7] This really is the crux of Plaintiffs' alleged understaffing policy: nursing professionals are unlikely to take breaks or clock out of work at the appointed time if doing so compromises lives and safety, especially when they are working alone and have been instructed not to take breaks or leave work in the absence of another nursing professional.

[8] *See* Robin J. Effron, *The Plaintiff Neutrality Principle: Pleading Complex Litigation in the Era of Twombly and Iqbal*, 51 W.M. & Mary L. Rev. 1997, 2002 (2010) (arguing Rule 12(b)(6) does not apply to pleading a class action, and that no rule requires that a class complaint plead facts showing the Rule 23 requirements can be satisfied); *see generally* Matthew J.B. Lawrence, *Courts Should Apply a Relatively More Stringent Pleading Threshold to Class Actions*, 81 U. Cin. L. Rev. 1225, 1250 (2013).

Finally, there is no basis to strike Plaintiffs' class allegations under Rule 12(f): Plaintiffs' allegations are not redundant, immaterial, impertinent, or scandalous, and it is not clear on the face of the complaint the class allegations cannot be proven. Fed. R. Civ. Proc. 12(f).

For these reasons, the Court declines to dismiss or strike Plaintiffs' class allegations, and Defendant's motion in this regard is denied.

## V. **CONCLUSION AND ORDER**

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. The Court has reviewed Plaintiffs' proposed SAC to determine whether amendment can cure the defective claims in the FAC and has entertained extensive briefing as to the proposed SAC's viability. In all respects but the two noted below (and discussed at length above), the claims in the SAC are sufficiently pled. Plaintiffs shall file their proposed SAC **after** amending it in accordance with this order: omitting any allegation pertaining to workweeks exceeding 40 hours,[9] and the prayer for injunctive relief.[10] No further motions to dismiss the complaint will be entertained.

Accordingly, it is HEREBY ORDERED that:

1.  Defendant's Motion to Dismiss is GRANTED as follows:

    a.  Plaintiffs' Cal. Labor Code § 510 claim for failure to pay overtime compensation for shifts exceeding 40 hours in a workweek is dismissed with prejudice and without leave to amend;

    b.  Plaintiffs' Cal. Labor Code § 510 claim for double-time compensation for shifts longer than 12 hours in a day is dismissed with leave to amend **as set forth in the proposed Second Amended Complaint**;

    c.  Plaintiffs' prayer for injunctive relief is dismissed with prejudice and without leave to amend;

2.  Defendant's Motion to Dismiss is DENIED in all other respects;

3.  Plaintiffs' proposed SAC with the noted amendments must be filed within 7 days from

---

[9] *See* Proposed SAC, Doc. 15, p. 46, ¶ 29 ("occasionally [worked] more than 40 hours per week").

[10] *See* Proposed SAC, Doc. 15, p. 54, ¶ 4.

the date of this order; and

4.  Defendant's answer to the SAC shall be filed no later than 14 days after the SAC has been filed.

IT IS SO ORDERED.

Dated:  **February 25, 2019**              **/s/ Lawrence J. O'Neill**
                                            UNITED STATES CHIEF DISTRICT JUDGE

27